UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| MARTIN M.  HALKA, | ) | CASE NO.  3:10 CV 1238 |
| | ) | |
| Petitioner, | ) | JUDGE DAVID A. KATZ |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| J. T. SHARTLE, | ) | |
| | ) | |
| Respondent. | ) | |

Pro se petitioner Martin M.  Halka filed the above-captioned habeas corpus action

on June 2, 2010 pursuant to 28 U.S.C. § 2241.  Petitioner is incarcerated at the Federal Satellite Low

in Elkton, Ohio (F.S.L. Elkton) and names Warden J.T. Shartle as Respondent.  Mr. Halka seeks an

order from this Court directing Respondent to assess his immediate need for drug treatment

placement in a combination of home confinement and a halfway house.  He has also filed a Motion

for Expedited Order to Show Cause [Dkt.#3], which is **denied**.  For the reasons set forth below, the

petition is dismissed.

Background

Mr. Halka pleaded guilty to conspiracy to distribute a controlled substance in this

Court on July 7, 2008.  United States v.  Halka, No.  3:07cr0180 (N.D. Ohio filed Mar. 22, 2007).

He was sentenced on May 15, 2009 to a term of 24 months of imprisonment.  A copy of the Judgment Order, which he attaches to his petition, reveals this Court's recommendation that petitioner "be committed to a facility where he can participate in a Residential Drug Treatment Program.  If this cannot be done the Court recommends a facility as close to Toledo, Ohio as possible." Id. (Judgment of 5/18/09.)

Petitioner self-surrendered to F.C.I. Elkton on September 1, 2009.  Shortly thereafter, he applied to participate in a Residential Drug Abuse Program (RDAP) through the Bureau of Prisons (BOP).  He claims he was admitted to the RDAP, but 10 days before he was scheduled to start, the BOP Drug Abuse Coordinator A.Ward, Ph. D., advised him he could not participate in the RDAP.  Petitioner attached a copy of a "Notice" he received captioned "Halka, Martin #43635 B03-044 Lower," which states:

> You are scheduled to participate in the RDAP Program.  You are now scheduled to participate in the next program, and need to move to Unit AB today, November 1st, 2009.  So today after the noon meal, report to the Alpha Unit Officer before 2:00pm with all your property.  If you do not want to move, sign out of the program with Counselor Byerly.

(Pet.'s Ex.  2 at 1.)  Petitioner claims Dr.  Ward told him he could not participate in the RDAP because it required 18 months, or 547 days, and petitioner allegedly only had 541 days remaining on his sentence.  Mr. Halka argues that Dr. Ward "did not suggest to Petitioner that he could voluntarily waive six days of Good Conduct Time so that he could participate in RDAP."  (Pet. at 4.)

Mr.  Halka then "sought to have his time in a community corrections facility . . . extended so that he could obtain treatment prior to returning home.  On December 9, 2009, he filed an Informal Resolution Form requesting 12 months placement in a half-way house.  Twelve days

later, Dr. Ward responded to petitioner's request and advised that "[a]ll requests for halfway house placement are processed by Unit team."  (Req. Admin. Rem. of 12/21/09.)  Instead of submitting his request to the Unit Team, however, Mr. Halka wrote a March 5, 2010 letter to the undersigned asking for admission to a 90 day in-patient drug program offered "at COMPASS for rehabilitation." (Letter from Halka to Katz of 3/5/10, at 1.)[1]  Petitioner also wrote a BOP letter, dated April 5, 2010 and addressed "To Whom it May Concern," requesting 6 months placement in a Residential Reentry Center (RRC) and 90 days in-patient drug and alcohol treatment in a Toledo, Ohio facility.

The Regional Administrator for Community Corrections at the BOP, Edward Hughes, replied to Mr. Halka's letter on April 15, 2010.  Mr. Hughes explained that it is the warden who examines a number of factors before determining the amount of time to which any prisoner should be designated for RRC placement.  He suggested Mr. Halka direct his request to the warden.  He noted further that the BOP does not authorize inmate participation in any "in-patient drug treatment program while residing in a RRC."  (Letter from Hughes to Halka of 4/15/10.)

On April 20, 2010, Mr. Halka sent Warden Shartle a letter requesting 6 months placement in a RRC and 6 months home confinement for substance abuse treatment under the Second Chance Act.  Warden Shartle responded directly to Mr. Halka in a letter dated May 10, 2010, as follows:

> A review of file materials indicates you were considered for RRC placement under the 'Second Chance Act of 2007' on October 13, 2009.  Staff contemplated the nature and circumstances of your offense, your history and characteristics, any statement of your sentencing court, any pertinent policy statement issued by the U.S. Sentencing

---

[1]    On behalf of the Court, Supervising Officer Eric Corns from U. S. Probation replied to Mr. Halka's letter on March 23, 2010.  Mr. Corns explained that the court did not have authority to grant petitioner's request.

> Commission, whether you completed Inmate Skills Development programming, non-residential Drug Abuse Treatment Program, or the Residential Drug Abuse Treatment Program (RDAP).  Staff have also reviewed your need for services, public safety, and the necessity of the Bureau of Prisons to effectively manage its inmate population. . . .  Based upon a review of the aforementioned criteria, staff determined an RRC placement of 80-102 days is of sufficient duration to assist with your transition back into the community.

(Letter from Shartle to Halka of 5/10/10.)

Before receiving the Warden's response, Mr. Halka filed another Informal Resolution Form on April 26, 2010.  The request was for placement in a 500 hour drug program based on petitioner's stated "history of substance abuse and my judge ordered me to take the 500 hour drug program.  I am being denied RDAP by Dr. Ward."  (Req. Admin. Rem. of 4/26/10.)  Ultimately, he asked for permission to participate in a RDAP.  Dr. Ward responded on April 27, 2010 and explained: "I/M currently has 13 months remaining on sentence and would [be] unable to complete 15 month program." " Id.

Finally, petitioner attaches a letter signed by Jeff Barga, Intake Coordinator at Ohio Link Corrections & Treatment, Inc. and dated May 11, 2010 as Exhibit 3.  The letter notifies petitioner that he has been accepted into Ohio Link's residential treatment program.  Mr. Halka is advised to report to the program at an address in Toledo, Ohio on February 11, 2011.  Petitioner's scheduled release from custody is May 23, 2011.

Initial Review

This matter is before the court for screening. 28 U.S.C. § 2243; Harper v. Thoms, No. 02-5520 2002, WL 31388736, at *1 (6th Cir. Oct. 22, 2002).  At this stage, allegations in the petition are taken as true and liberally construed in petitioner's favor. Urbina v. Thoms, 270 F.3d 292, 295

4

(6th Cir.2001).  As Mr.  Halka is appearing pro se, his petition is held to less stringent standards than

those drafted by attorneys.  Burton v. Jones, 321 F.3d 569, 573 (6th  Cir.2003); Hahn v. Star Bank,

190 F.3d 708, 715 (6th  Cir.1999).  For the reasons set forth below, his petition lacks merit.

### Pre-Release Community Confinement

The authority to designate where a federal prisoner is confined rests solely with the

BOP.  There are two statutes upon which this authority is essentially based.  The first, 18 U.S.C. §

3621(b), states:

> The Bureau of Prisons shall designate the place of the
> prisoner's imprisonment. The Bureau may designate
> any available penal or correctional facility that meets
> the minimum standards of health and habitability
> established by the Bureau, whether maintained by the
> Federal Government or otherwise and whether within
> or without the judicial district in which the person
> was convicted, that the Bureau determines to be
> appropriate and suitable, considering-
>
> > (1) the resources of the facility contemplated;
> > (2) the nature and circumstances of the offense;
> > (3) the history and characteristics of the prisoner;
> > (4) any statement by the court that imposed the sentence-
> >
> > > (A) concerning the purposes for which the sentence to
> > > imprisonment  was determined to be warranted; or
> > > (B) recommending a type of penal or
> > >  correctional facility as a appropriate; and
> >
> > (5) any pertinent policy statement issued by the Sentencing
> > Commission pursuant to section 994(a)(2) of title 28.
> > In designating the place of imprisonment or making
> > transfers under this subsection, there shall be no
> > favoritism given to prisoners of high social or
> > economic status. The Bureau may at any time, having
> > regard for the same matters, direct the transfer of a
> > prisoner from one penal or correctional facility to
> > another.

5

The second relevant statute, 18 U.S.C. § 3624(c), mandates that the BOP facilitate a prisoner's reentry into society.   In 2007, Congress amended section 3624(c)(1) through the Second Chance Act of 2007 ("the Act"), 42 U.S.C. § 17501 (effective April 9, 2008).  The statute was amended  to direct that: "the BOP Director shall ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." Second Chance Act, Pub. L. 110-199, § 251, 122 Stat. 660, 692 (2008).

The BOP issued an interim policy memorandum on April 14, 2008 to address RRC placement considerations in accordance with the Act. The memorandum states the "categorical timeframe limitations on prerelease community confinement" found in 28 C.F.R. §§ 570.20 and 570.21 "are no longer applicable and must no longer be followed." The memorandum further required that RRC placement decisions be made on an individual basis with reference to the five-factor criteria set out in section 3621(b).

Here, Mr.  Halka's primary concern is the denial of his placement in a RDAP after his initial acceptance in the Program.  He asks the court to order Respondent to analyze his eligibility for placement in a half-way house and/or residential drug treatment under the provisions of the Act.  A review of the petition and attachments, however, reveals the warden has already engaged in an analysis of the five factors outlined in section 3621.  Effective February 11, 2011, Mr. Halka is scheduled to enroll in Ohio Link's residential treatment program.  While the length of his placement may be a shorter term than petitioner would like, this court cannot dictate a longer term.

After a district court sentences a federal offender it is the Attorney General, through

the BOP, who has the responsibility for administering the sentence.  See 18 U.S.C. § 3621(a) ("A person who has been sentenced to a term of imprisonment ... shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed").  While this court "strongly recommended" Mr. Halka's participation in a drug treatment program, that is the extent of the court's authority once a prisoner is in BOP custody.  Therefore, petitioner's ineligibility for RDAP placement based on the length of his prison term did not infringe on any protected right. Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner." 18 U.S.C. § 3621; Moody v. Daggett, 429 U.S. 78, 88 (1976); Beard v. Livesay, 798 F.2d 874 (6th Cir.1986).  There is no constitutional or inherent right of a convicted person to be released before the expiration of a valid sentence. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979).

The BOP's website indicates Mr. Halka's release date is May 23, 2011.  See http://www.bop.gov.  While he seeks immediate consideration for CCC placement, his request ignores the BOP's compliance with the Act.  The Act requires only that C.C.C. placement decisions be made on an individual basis with reference to the five-factor criteria set out in 18 U.S.C. § 3621(b).  The record shows Mr. Halka received, through legislative and administrative action, all of the relief to which he is entitled.  In his response to petitioner's request for early release, Warden Shartle outlined all the relevant factors required in the statute.  Other than the fact petitioner did not receive 18 months placement in a RDAP during his 24 months prison term, there are no facts that suggest a categorical denial of his request for longer C.C.C. placement. Petitioner has no due process right to be placed in a C.C.C. earlier than the date on which the BOP assigns him--as long it has considered the factors set forth in § 3621(b) as required by the Second Chance Act of 2007.

7

Conclusion

Based on the foregoing, this petition is dismissed pursuant to 28 U.S.C. § 2243. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

/s/ David A. Katz

_____

DAVID A. KATZ
UNITED STATES DISTRICT JUDGE